**THE GAP, Appellant,**

v.

**Cheryl CURTIS; Hon. Roger D. Riggs, Administrative Law Judge; and Workers' Compensation Board Appellees**

No. 2003–SC–0733–WC.

Supreme Court of Kentucky.

Aug. 26, 2004.

Otto Daniel Wolff, McMurtry & Wolff, Covington, Counsel for Appellant.

Gregory N. Schabell, Busald, Funk & Zevely, PSC, Florence, Counsel for Appellee.

### OPINION OF THE COURT

KRS 342.140(1)(d) excludes "overtime or premium pay" from the calculation of an injured worker's average weekly wage. An Administrative Law Judge (ALJ) determined that the additional fifty cents per hour the claimant received for working the third shift was premium pay and refused to include it in her weekly wage. Convinced, however, that the differential was part of the claimant's regular hourly rate and not a premium, the Workers' Compensation Board (Board) reversed. The Court of Appeals affirmed the Board, and we affirm.

In August 2000, the claimant sustained work-related injuries to her lower back, right leg, and hip. When the claim was heard, the amount of her average weekly wage was among the contested issues. Relying upon *Denim Finishers v. Baker*, Ky.App., 757 S.W.2d 215, 216 (1988), the claimant asserted that the additional fifty cents per hour she received for working the night shift was part of her regular pay and should be considered when calculating her average weekly wage. The employer asserted, however, that overtime pay and premium pay are two distinct concepts and that KRS 342.140(1)(d) excludes both.

When the Kentucky Statutes were recompiled in 1942, KRS 342.140(1) provided that "Compensation shall be computed at the average weekly wage of the employe[e] at the time of injury, reckoning wages as earned while working at full time." A 1946 amendment explained, "At full time" as used herein means a full working day for five (5) days in every week of the year regardless of whether the injured employee actually worked all or part of the time. 1946 Ky. Acts ch. 37, § 7. The more complex provision that is presently at issue was adopted in 1964. 1964 Ky. Acts ch 192, § 14. Although KRS 342.140(1)(a)4 has since been renumbered as KRS 342.140(1)(d), it remains substantially the same today and provides as follows:

> The average weekly wage of the injured employee at the time of the injury or last injurious exposure shall be determined as follows:
>
> (1) If at the time of the injury which resulted in death or disability or the last date of injurious exposure preceding death or disability from an occupational disease:
>
> . . .
>
> (d) The wages were fixed by the day, hour, or by the output of the employee, the average weekly wage shall be the wage most favorable to the employee computed by dividing by thirteen (13) the wages (*not including overtime or premium pay*) of said employee earned in the employ of the employer in the first, second, third, or fourth period of thirteen (13) consecutive calendar weeks in the fifty-two (52) weeks immediately preceding the injury. (emphasis added).

Chapter 342 does not define "overtime or premium pay." Therefore, it is unclear whether the legislature intended to exclude two distinct types of pay or to exclude only the premium that is added to an individual's hourly wage for hours worked in excess of the regular work week. Two decisions have addressed the meaning of the exclusion.

In *R.C. Durr Co., Inc. v. Chapman*, Ky.App., 563 S.W.2d 743 (1978), the employer maintained that KRS 342.140(1)(d) limited a worker's average weekly wage to his pay for forty hours a week and excluded any pay from working overtime. Rejecting the argument, the court determined:

> The exclusion of overtime or premium pay in KRS 342.140(1)(d) refers to pay in excess of the employee's regular hourly rate because of the extra hours worked. It does not restrict the calculation of the employee's average weekly wage to the forty hour week.

*Id.* at 745. The court concluded, therefore, that Chapman's average weekly wage was the product of the sixty hours that he worked each week and his base hourly rate. It took into account the overtime hours but at the regular hourly pay rate.

In *Denim Finishers v. Baker, supra*, the employer asserted that the extra six cents per pair Ms. Baker received for pressing more than 350 pairs of pants in a forty-hour week was "premium pay" and must

be excluded when calculating her average weekly wage. The court rejected the argument, stating that the evidence suggested the extra payment constituted "output pay" for her output above 350 pairs. *Id.* at 216. Relying on *Durr v. Chapman, supra,* the court also noted that Ms. Baker worked no extra hours and that KRS 342.140(1)(d)'s exclusion referred to "pay in excess of the employee's regular hourly rate *because of the extra hours worked.*" *Id.* (emphasis original).

The plain language of KRS 342.140(1)(d) could be construed either as referring to two distinct types of pay or as equating them. The employer argues that by adopting the latter construction in *Denim Finishers v. Baker, supra,* the court effectively negated the term "premium pay" from the statute. We disagree. Despite dicta that could be read as equating the definitions of overtime and premium pay, *Denim Finishers* concerned only the principle that extra pay for each item produced in excess of a stated number per 40–hour week was a form of "output pay." The decision was rendered in 1988, and the legislature has not seen fit to amend KRS 342.140(1)(d) or to define "premium pay" since that time. For that reason, we are not persuaded that the decision was at odds with the legislative intent. We have concluded that the present circumstances do not require us to define the term "premium pay." Nonetheless, mindful that no statute defines the term and that questions regarding its meaning are likely to arise again, we note that a regulation defining the term would be helpful to both the bench and bar.

Like Ms. Baker, the claimant was not paid extra in return for working more than forty hours per week. The employer maintains that she performed the same work as day-shift employees and that the shift differential was "premium pay," but we are persuaded that she provided an additional service to the employer by working at an undesirable time. It was for that service that she received fifty cents more per hour. As a result, she had a greater earning capacity than a comparable day-shift worker. Therefore, consistent with the previous decisions, her average weekly wage takes that into account.

The decision of the Court of Appeals is affirmed.

All concur.